IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Betty Kay Miles, ) | C/A No.: 1:12-176-JMC-SVH |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | REPORT AND RECOMMENDATION |
| Salvation Army, Angela Repass, and ) | |
| David Repass, ) | |
| ) | |
| Defendants. ) | |
| ) | |

In this employment discrimination case, Betty Kay Miles ("Plaintiff"), proceeding pro se, is suing her former employer, the Salvation Army ("Army"), along with her former supervisors, Angela Repass and David Repass (collectively "Defendants"). Construed liberally, Plaintiff's complaint alleges discriminatory discharge and hostile work environment claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"), and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq. ("ADEA"), as well as a Title VII wage discrimination claim.

This matter comes before the court on Defendants' renewed motion[1] for summary judgment filed on July 22, 2013. [Entry #59]. The motion seeks summary judgment on Plaintiff's discriminatory discharge claims. Plaintiff filed a response brief on August 1, 2013. [Entry #62]. In evaluating Defendants' renewed motion, the undersigned also considers Plaintiff's response [Entry #48] to the original summary judgment motion [Entry #45]. Also before the court is Plaintiff's motion to consolidate filed on August 5,

---

[1] On July 17, 2013, the district judge issued an order directing Defendants to file a renewed motion for summary judgment with the attachments necessary to create a record in this case. [Entry #56].

2013. [Entry #63].

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(g) (D.S.C.). Because the motion for summary judgment is dispositive, this report and recommendation is entered for the district judge's consideration. For the reasons that follow, the undersigned recommends the district court grant the motion for summary judgment, dismiss Plaintiff's remaining claims sua sponte, and deny Plaintiff's motion to consolidate as moot.

I.     Factual Background

Plaintiff began working for the Army in approximately May 1994 as a shelter director. Pl. Dep. 14:10–13, 16:14–16 [Plaintiff's deposition testimony may be found at Entry #59-10]. According to Plaintiff, the shelter assists the homeless and others in need and the shelter director is responsible for management of staff, scheduling, and client cases. Pl. Dep. 19:6–18. The shelter includes a soup kitchen that serves three meals a day to shelter residents and one meal a day to people not staying at the shelter. Pl. Dep. 30:23–31:11. The job description for shelter director provides that it is an essential function of the shelter director to supervise and participate in the "day-to-day operations of a housing facility in order to meet the requirements of funding sources and The Salvation Army." [Entry #59-10 at 111]. The job description also indicates that the shelter director is "on-call 24 hours a day/365 days a year to address emergencies, etc." *Id.* at 112.

Plaintiff testified that she left the Army for another job in 1997 or 1998, but

returned in 1999 to serve as shelter director. Pl. Dep. 18:2–9. She stated that she voluntarily left her position again in 2008. Pl. Dep. 18:17. She testified that in October 2009, she returned to the position of shelter director. Pl. Dep. 24:18–25. Throughout Plaintiff's time at the Army, she considered Annette Heath ("Heath") to be her direct supervisor, but she testified that the captain was the head of the entire organization. Pl. Dep. 25:5–10, 28:16–23. When Plaintiff returned to the Army in 2009, defendant Angela Repass ("Captain") was the captain. Pl. Dep. 14–15.

On March 22, 2010, Plaintiff was written up for failing to obtain approval for another employee to work overtime. [Entry #59-10 at 116]. The disciplinary report indicates that Plaintiff had been told several times that overtime had to be cleared with the Captain. *Id.* Plaintiff testified that she was aware that overtime had to be cleared with the Captain. Pl. Dep. 42:24–43:10, 44:10–13.

On May 4, 2010, Plaintiff was written up for permitting an employee to take confidential client information home for the purpose of performing data entry. [Entry #59-10 at 117]. Plaintiff testified that she received an appropriate reprimand for this incident and that, although she knew the information was confidential, she "just really honestly just did not think about that at the time." Pl. Dep. 45:18–25.

An employee evaluation completed on July 19, 2010, notes that Plaintiff often ignored, overlooked or misinterpreted assigned tasks; accomplished tasks only with recurrent or constant supervision; failed to complete immediate or primary assignments; and struggled to balance time effectively to meet performance goals. [Entry #59-16 at 4]. Plaintiff noted on the evaluation that she did not feel that the review accurately

described her performance. *Id.* at 9.

On August 25, 2010, Plaintiff was written up for failing to get the schedule covered when she was absent following a death in her family. [Entry #59-10 at 118]. The disciplinary report indicates that Plaintiff also yelled at a human resources employee who called to ask her a question. *Id.* Plaintiff testified that after her brother-in-law's sudden death on a Sunday, she contacted co-worker Erma Frazier about taking care of the shelter work schedule. Pl. Dep. 46:21–47:13. She stated that later in the week, while she was at the funeral home, Heath repeatedly called her regarding the schedule and the two of them got into a shouting match on the phone. Pl. Dep. 47:16–25. Plaintiff felt that she had done what she was supposed to do with regard to the schedule and that Heath and the Captain were being inconsiderate and nitpicky. Pl. Dep. 49:5–21.

Plaintiff was written up on September 7, 2010, after she covered a shift at the shelter without clocking in. [Entry #59-10 at 119]. She stated that the Captain called Plaintiff the morning that she worked the shift, confirmed that Plaintiff was not going to get overtime, and told her that she was not supposed to work without clocking-in. Pl. Dep. 50:20–51:5. Plaintiff testified that the Captain did not try to rectify the situation that day and allowed Plaintiff to work, but changed her attitude on Monday morning and completed the disciplinary report. Pl. Dep. 51:7–25. Plaintiff stated that working without clocking-in was against policy and that she had done it many times over the years. Pl. Dep. 52:13–53:9. She testified that she felt this reprimand was unfair. Pl. Dep. 53:10–11.

On January 20, 2011, Plaintiff was written up for initialing a time card for another

4

employee against Army policy. [Entry #59-10 at 120]. She testified she knew that doing so was wrong, but that the employee would not have gotten paid if she had not done it. Pl. Dep. 53:19–54:5. She stated that she did not necessarily think this reprimand was unfair. Pl. Dep. 55:22–23.

On May 14, 2011, Plaintiff was written up for failing to make plans to pick up donated goods from a grocery store. [Entry #59-10 at 121]. According to the disciplinary report, the Army consequently lost the food donation. *Id.* Plaintiff felt that she should not have been written up for the incident because, after she failed to pick up the food, she spoke to the grocery store manager who told her that the store had decided to donate the food to a food bank. Pl. Dep. 38:4–16. He allegedly stated that the decision did not have anything to do with Plaintiff not picking up the food. *Id.*

On June 11, 2011, Plaintiff was written up after she failed to keep shelter residents inside because of heat as the Captain instructed her to do. [Entry #59-10 at 122–23]. Plaintiff testified that the shelter residents were not permitted to stay inside the shelter all day unless it was unusually hot or cold outside. Pl. Dep. 63:20–64:10. Plaintiff was also written up for changing the shelter schedule after being instructed not to. [Entry #59-10 at 122–23]. The Captain advised Plaintiff that she was being placed on probation for 60 days as a result of her poor job performance. *Id.* at 124. The memorandum identified the following reasons for Plaintiff being placed on probation: failure to follow through on HMIS data entry and corrections, failure to follow the instructions given by the Captain, tardiness to staff meetings, failure to remind employee of mandatory meeting, and being irresponsible with paperwork and client information. *Id.* The memorandum further

5

noted, "If MAJOR improvement is not seen it may result in your termination." *Id.*

After receiving the memorandum placing her on probation, Plaintiff resigned by giving her two-week notice on June 13, 2011. Pl. Dep. 34:14–21, 62:24–63:2; Entry #59-10 at 115, 122. She testified that she felt resignation was necessary because of the "constant harassment" at work, which involved being unnecessarily written up. Pl. Dep. 36:11–23.

On June 20, 2011, the Captain issued Plaintiff a disciplinary report for failure to follow instructions. [Entry #59-4 at 1]. The report indicated that Plaintiff had closed the soup kitchen for two days without permission and "proved [that] she [was] not going to work 100 percent to do things the way she should." *Id.* Attached to the report was a notice stating that the soup kitchen would be closed on June 20 and 24, 2011. *Id.* at 2. It was signed "management." *Id.* Plaintiff testified that the person in charge of the soup kitchen had been given those days off by the Captain. Pl. Dep. 65:3–13. Plaintiff felt like requiring her to operate the soup kitchen on those two days was the Captain's way of doing "one last thing . . . against [her]" and that it was an unfair burden. Pl. Dep. 69:4–10, 70:15–20. Because she felt that way, she did not obtain permission to close the soup kitchen even though she stated that it would not have been difficult at all to obtain such permission. Pl. Dep. 70:11–20.

Later on June 20, 2011, Plaintiff received a call from the Captain, who asked whether she had closed the soup kitchen. Pl. Dep. 85:5–14. Plaintiff stated that she had closed the soup kitchen, and the Captain informed her that she was being terminated. Pl. Dep. 85:14–19. The termination notice indicated that she was terminated "for cause" for

6

insubordination and unsatisfactory work.  [Entry #59-3 at 1].

Plaintiff filed a charge with the South Carolina Human Affairs Commission ("SCHAC") on August 22, 2011, alleging that she had been discriminated against on the basis of race and age.  [Entry #59-5 at 2].  SCHAC issued a dismissal and notice-of-right-to-sue letter on December 14, 2011.  [Entry #59-7 at 1].  Plaintiff filed this lawsuit on January 18, 2012.  [Entry #1].

II.     Defendants' Motion for Summary Judgment

   A.     Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id*.  At the summary judgment stage, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor.  *Id*. at 255.

   B.     Discussion

Defendants move for summary judgment on Plaintiff's age and race discriminatory discharge claims.[2]  [Entry #59-1 at 6–9].  Read liberally, Plaintiff's

---

[2] Although Defendants assert that Plaintiff is also stating a sex discrimination claim, the undersigned does not interpret the complaint to state such a claim.  Plaintiff contends that Defendants wanted to replace her with someone of her own gender [Entry #1 at 3]; thus,

7

complaint also asserts claims of hostile work environment and wage discrimination.

    1.    Individual Defendants

As an initial matter, the undersigned finds that the court is without subject matter jurisdiction over the individual defendants because there is no individual liability under Title VII or the ADEA. Defendants have failed to make this argument at any stage of the proceedings; however, courts are duty-bound to clarify their subject matter jurisdiction, even if the parties do not develop it as an issue. *Simon Coal Co. v. Apfel*, 226 F.3d 291, 299 (4th Cir. 2002); *Cook v. Georgetown Steel Corp.*, 770 F.2d 1272, 1274 (4th Cir. 1985) (finding that "lack of subject matter jurisdiction is an issue that requires *sua sponte* consideration when it is seriously in doubt").

Title VII prohibits discrimination by employers. *See* 42 U.S.C § 2000e–2. Title VII defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such person." 42 U.S.C. § 2000e(b). In construing the definition of "employer" under Title VII, it is well-established that Title VII does not impose individual liability on supervisory employees. *See Lissau v. Southern Food Serv., Inc.*, 159 F.3d 177, 180–81 (4th Cir. 1998) (holding that supervisors cannot be found liable in their individual capacity under Title VII because they do not fit within the definition of an employer).

Likewise, the Fourth Circuit has held that the ADEA limits liability to employers and prohibits individual liability against employees as agents of the employer. *Birbeck v.*

---

it does not appear that she is asserting a gender discrimination claim under Title VII. However, even if she were attempting to assert a gender discrimination claim, the analysis would be the same as the analysis of her race discrimination claim set forth herein.

*Marvel Lighting Corp.*, 30 F.3d 507, 510 (4th Cir. 1994).

Because all of Plaintiff's claims are brought under either Title VII or the ADEA and those statutes do not provide for individual liaiblity, the undersigned recommends that Angela Repass and David Repass be dismissed as defendants. Dismissal of these defendants leaves the Army as the only remaining defendant.

        2.      Race and Age Discriminatory Discharge Claims

In Title VII and ADEA claims, absent direct evidence of discrimination, as is the case here, Plaintiff must prove her allegations under the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and its progeny. *See Laber v. Harvey*, 438 F.3d 404, 430 (4th Cir. 2006) (finding that in the absence of direct evidence, courts analyze age discrimination claims under the same burden-shifting framework used to resolve other discrimination cases).[3] Under *McDonnell Douglas*, Plaintiff first must establish by a preponderance of evidence each element of her prima facie case of discrimination. *Id.* at 802. To state a prima facie case of race or age discrimination, Plaintiff must prove: (1) she is a member of a protected class; (2) she was performing satisfactorily; (3) she suffered an adverse employment action; and (4) similarly-situated employees received more favorable treatment. *Coleman v. Maryland Ct. of Appeals*, 626

---

[3] The Supreme Court has noted that it "has not definitively decided" whether the *McDonnell Douglas* framework, first developed in the context of Title VII cases, "is appropriate in the ADEA context." *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 175, n. 2 (2009). In the absence of further direction from the Supreme Court, the undersigned must follow Fourth Circuit precedent, which applies the *McDonnell Douglas* framework to ADEA claims. *See Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004); *see also Bodkin v. Town of Strasburg*, 386 Fed. Appx. 411, 413–14 (4th Cir. 2010) (continuing to apply the *McDonnell Douglas* framework following the *Gross* opinion).

9

F.3d 187, 190 (4th Cir. 2010) (Title VII); *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004) (ADEA). Where Plaintiff claims discriminatory discharge, the fourth element has also been identified as whether Plaintiff can demonstrate that the position was filled by a similarly-qualified applicant outside of the protected class. *King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003).

If Plaintiff establishes a prima facie case, the burden shifts to the Army to produce a legitimate, nondiscriminatory reason for the disparate treatment. *Texas Dep't. of Cmty Affairs v. Burdine*, 450 U.S. 248, 254 (1981). This is merely a burden of production, not of persuasion. *St. Mary's Honor Ctr v. Hicks*, 509 U.S. 502, 506 (1993).

Once the Army meets its burden of production by producing a legitimate, nondiscriminatory reason, the sole remaining issue is "discrimination *vel non.*" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (citing *Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983)). In other words, the burden shifts back to Plaintiff to demonstrate by a preponderance of the evidence that the legitimate reason produced by the Army is not its true reason, but was pretext for discrimination. *Reeves*, 530 U.S. at 143. Throughout the burden-shifting scheme set forth in *McDonnell Douglas*, the ultimate burden of proving that the Army intentionally discriminated against Plaintiff remains at all times with Plaintiff. Plaintiff has the ultimate burden of presenting evidence from which a reasonable jury could conclude the Army intentionally discriminated against her.

It is undisputed that Plaintiff is African-American and was terminated from her employment, thereby satisfying the first two elements of the claims. Although the Army contends that Plaintiff has failed to establish a prima facie case of discrimination, it fails to provide argument to support its conclusion. [Entry #59-1 at 8–9]. Thus, the undersigned assumes, without deciding, that Plaintiff has established a prima facie case of discrimination under Title VII and the ADEA.

The burden, therefore, shifts to the Army to establish a legitimate non-discriminatory reason for Plaintiff's termination. The Army argues that Plaintiff was terminated because of her continued and repeated disregard for the policies and procedures of the Army and the shelter in which she worked. [Entry #59-1 at 6]. The Army contends that her disregard is demonstrated by numerous disciplinary warnings and her unilateral decision to close the shelter's soup kitchen for two days without permission. *Id.* at 5. In support of its renewed motion for summary judgment, the Army provides documentation of Plaintiff's numerous disciplinary issues, including eight disciplinary reports issued from March 2010 to June 2011. [Entries #59-10 at 116–23, #59-4]. The Army also provides a 2010 employee evaluation noting several areas in which Plaintiff needed improvement. [Entry #59-16]. Finally, the Army provides Plaintiff's termination notice indicating that, after she had submitted her two-week resignation notice, she was terminated for closing the shelter's soup kitchen without permission. [Entry #59-4]. The undersigned concludes that these documents support the Army's contention that it had a legitimate, non-discriminatory reason for terminating Plaintiff.

Because the Army has established a legitimate, non-discriminatory reason for Plaintiff's termination, the burden shifts to Plaintiff, who must show that the legitimate reasons offered by the Army were not the true reasons, but were a pretext for discrimination. This burden on Plaintiff merges with her ultimate burden of persuading the court that she is the victim of intentional discrimination. *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

With respect to her Title VII claim, Plaintiff fails to offer any evidence of pretext or race discrimination. Plaintiff's complaint alleges only that Defendants "targeted people of color." [Entry #1 at 3]. In her response to the original summary judgment motion, Plaintiff makes a general assertion regarding "ill treatment of blacks." [Entry #48-2 at 2]. In her response to the renewed motion, she generally states that the reasons for her termination were discrimination and bias. [Entry #62 at 1]. However, because Plaintiff's subjective assertions and unsupported speculation are insufficient to create a genuine dispute of material fact as to Defendants' allegedly discriminatory conduct, Plaintiff must come forward with allegations substantiated by accounts of specific dates, times, or circumstances to survive summary judgment. *See Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (finding that "neither unsupported speculation, nor evidence that is merely colorable or not significantly probative will suffice to defeat a motion for summary judgment; rather, if the adverse party fails to bring forth facts showing that reasonable minds could differ on a material point, then, regardless of any proof or evidentiary requirements imposed by the substantive law, summary judgment, if appropriate, shall be entered") (internal citations omitted).

Plaintiff has failed to identify any specific incidents suggestive of racial discrimination or pretext.

Likewise, Plaintiff has failed establish pretext with regard to her age discrimination claim. As with her race discrimination claim, she generally alleges ill treatment of individuals over 40 years old. [Entry #48-2 at 2]. Such general allegations are insufficient to defeat summary judgment. *See Bouchat*, 346 F.3d at 522. Plaintiff's only specific factual allegation regarding age discrimination is her contention that the Captain made negative comments about another employee named Ms. Heath (first name unknown), who had allegedly worked for the Salvation Army for over 40 years. [Entry #48-2 at 2]. Plaintiff alleges that the Captain commented that the Salvation Army could save a lot of money if Ms. Heath retired. *Id.* When Ms. Heath did not retire, the Captain allegedly cut her hours. *Id.* at 2–3. Plaintiff has alleged no connection between these comments and her own termination. Thus, the undersigned recommends finding that they are insufficient to establish pretext.

Not only has Plaintiff failed to establish pretext, she has also failed to present any evidence tending to show that the Army did not believe its stated reason for firing her to be true. *See Holland v. Washington Homes, Inc.*, 487 F.3d 208, 217–18 (4th Cir. 2007) (concluding that no reasonable juror could conclude that the decision maker's reason was pretextual where the plaintiff's evidence "failed to address whether [the decision maker] did not honestly believe that the threats were made" and noting that "'[i]t is the perception of the decisionmaker which is relevant.'") (quoting *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435 (4th Cir. 1998)); *DeJarnette v. Corning, Inc.*, 133 F.3d 293,

13

299 (4th Cir. 1998) ("[T]his Court does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination.") (internal quotation marks and citations omitted).

Because Plaintiff has failed to produce any evidence showing that the Army considered her race or age when it terminated her, the undersigned recommends that the district court grant Defendant's motion for summary judgment as to Plaintiff's discrimination claims.

### 3.     Title VII and ADEA Hostile Work Environment Claims

Plaintiff also arguably asserts hostile work environment claims under Title VII and the ADEA. To establish a prima facie showing of a hostile work environment under either statute, Plaintiff must show that the offending conduct (1) was unwelcome, (2) was because of her race/age, (3) was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment, and (4) was imputable to her employer. *Baqir v. Principi*, 434 F.3d 733, 745–46 (2006).

Plaintiff alleges that Defendants harassed her daily because they wanted a younger, white female working as shelter director. [Entry #1 at 3]. She contends that Defendants called her on her days off and threatened termination on a daily basis. *Id.* Assuming the offending conduct was unwelcome and imputable to her employer, Plaintiff has failed to show that it was because of her race or age or that it was sufficiently severe and pervasive. Plaintiff has not identified any specific comments that Defendants made related to her race or age. Her assertion that Defendants harassed her because they wanted to hire a younger, white female as shelter director is not supported

14

by any record evidence. Therefore, she has not proffered any evidence that Defendants' actions were race- or age-based and has not set established the second element of the prima facie case.

Establishing the third element requires that Plaintiff show that the work environment was not only subjectively hostile, but also objectively so. *See EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008). Such proof depends upon the totality of the circumstances, including "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). Here, Plaintiff alleges only that Defendants called her on her days off and threatened her with termination on a daily basis. As to the calls on her days off, Plaintiff admitted at her deposition that in her job as shelter director, she was on-call 24 hours a day. Pl. Dep. 32:9–33:18. With regard to the alleged threats of termination, Plaintiff has provided no details regarding the threats and no corroborating evidence that they even occurred. The undersigned finds Plaintiff's allegations insufficient to show that the allegedly offending conduct was sufficiently severe and pervasive.

For these reasons, the undersigned recommends Plaintiff's hostile work environment claims be dismissed sua sponte. *See Whatley v. South Carolina Dept. of Public Safety*, No. 3:05-42, 2007 WL 120848, at *7 (D.S.C. Jan. 10, 2007) (dismissing a Title VII retaliation claim sua sponte where the plaintiff failed to demonstrate he engaged in protected activity and failed to establish a causal connection between any possible

protected activity and the adverse employment action).

### 4. Title VII Wage Discrimination Claim

Finally, Plaintiff alleges that the Army paid her less than it paid white employees. [Entry #1 at 3]. Liberally construed, Plaintiff's allegation forms the basis of a Title VII wage discrimination claim. To establish a prima facie case of wage discrimination under Title VII, Plaintiff must show that: (1) she is a member of a protected class; (2) she was paid less than an employee outside the class; and (3) the higher paid employee was performing a substantially similar job. *Brinkley-Obu v. Hughes Training, Inc.*, 36 F.3d 336, 343 (4th Cir. 1994). While Plaintiff is a member of a protected class, she has failed to establish the remaining two elements. When asked during her deposition about her wage discrimination allegations, she refused to reveal comparators or who told her that white employees made more money than black employees. Pl. Dep. 91:11–93:15. She also admitted that she had no documentation to prove her claim. Pl. Dep. 93:4–7. Because Plaintiff has refused to provide any evidence to support her wage discrimination claim, the undersigned recommends the district judge dismiss it sua sponte. *See Whatley*, 2007 WL 120848, at *7.

### III. Plaintiff's Motion to Consolidate

On August 5, 2013, Plaintiff moved to consolidate her case with *Erma Frazier v. Angela Repass, et al.*, No. 1:11-3356. [Entry #63]. Because the undersigned has recommended that none of Plaintiff's claims survive summary judgment, the undersigned recommends that Plaintiff's motion to consolidate be denied as moot.

IV.     Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends that defendants Angela Repass and David Repass be dismissed for lack of subject matter jurisdiction. The undersigned further recommends that Defendants' renewed motion for summary judgment [Entry #59] be granted as to Plaintiff's Title VII and ADEA discrimination claims. Finally, the undersigned recommends that Plaintiff's hostile work environment and wage discrimination claims be dismissed for failure to state a claim.

IT IS SO RECOMMENDED.

August 8, 2013                              Shiva V. Hodges
Columbia, South Carolina                    United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).